IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 2 9 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

ASHANN RA )
     Plaintiff, )
)     Case No. 7:04CV00637
)
v. )     **MEMORANDUM OPINION**
)
DANIEL BRAXTON, *et al.*, )     **By: Hon. James C. Turk**
     Defendants. )     **Senior United States District Judge**

The plaintiff, Ashahn Ra ("Ra"), proceeding *pro se*, brings this action under 42 U.S.C.

§1983, with jurisdiction vested under 28 U.S.C. §1343, alleging violations of the First and Ninth

Amendments to the Constitution of the United States. He also alleges a violation of the

Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. §§

2000cc-2000cc-5. The plaintiff claims that the defendants, Daniel Braxton, Larry Huffman, and

Duncan Mills, violated his constitutional rights by denying his request for colored pencils, and

denying his request for special meals. The case is before the Court on a motion for summary

judgment filed by the defendants (Dkt. No. 16).   For the following reasons the plaintiff fails to

establish a violation of RLUIPA or the Constitution, and thus the Court grants the defendants'

motion for summary judgment.

**I**

Ra, a Virginia inmate, is currently housed in the segregation unit of Red Onion State

Prison ("ROSP") – a maximum security facility. Ray Aff. ¶ 4. He alleges that the defendants

1

violated his constitutional rights and his rights under RLUIPA in two distinct instances.[1]  He says

they violated his rights by denying his request for colored pencils, and certain meals.

Ra wants the pencils to color tarot cards that he received as part of a correspondence

course he is taking through the Builders of the Adytum, Ltd. ("BOTA") – a religious organization

that purports to be based on the Mystical-Occult teachings and practices of the Holy Qabalah and

Sacred Tarot.  *See* Dkt. No. 2, Ex. B.  Apparently BOTA requires an "aspirant", as part of his

course of study, to paint his own set of Tarot Keys.  *Id.*  Although the founder of BOTA suggests

the use of Prang watercolors as a medium for coloring the Keys, the organization also offers

colored pencils – at a two dollar discount – to complete the task.  *Id.*  In his request to the Faith

Review Committee ("FRC"), Ra asked only for colored pencils; he did not ask for watercolors.

Additionally, he did not request wax crayons, pastel chalks, or three inch bendable, felt-tipped,

nontoxic, washable markers.[2]

Because Ra currently resides in the segregation unit of ROSP – an area reserved for the

most violent and highest security risk inmates – the character and quantity of property allowed in

his cell is significantly limited.  Ray Aff. ¶ 4.  VDOC Division Operating Procedure ("DOP")

856 governs the possessions allowed these inmates.  *See* DOP 856 Attachment 3C 4.0

---

[1]Ra combined two issues in his request form to the Virginia Department of Corrections ("VDOC").  He has not explained, however, how they are related.  Thus, the Court will treat these issues as distinct.

[2]Ra suggests these alternative coloring devices in his opposition to the defendants motion for summary judgement.  (Dkt. No. 26)  Because he did not present these alternatives to the defendants at the administrative level, the Court will not consider them in this case.  *See Cutter v. Wilkinson,* — U.S. — n.12, 125 S.Ct. 2113, 2123 n. 12 (2005) (stating, "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies.")

(describing allowable religious possessions)[3]; *see also* DOP 856 Attachment 3C 6.0 (providing list of other allowable possessions). One piece of property segregation inmates may possess is a "security pen", a short, transparent, flexible writing utensil with a small point. Ray Aff. ¶ 10. Colored pencils are not included in the list of allowed religious or non-religious property.

If an inmate wants to possess a particular piece of property for religious purposes, and it is not specifically listed in DOP 856, he may file a request with the FRC. *See* DOP 850 (stating that inmate requests for "religious personal property" not specifically authorized shall be reviewed by the FRC for final decision). Ra followed this procedure to request the colored pencils by claiming they are "religious personal property."[4] The FRC denied his request for the pencils based on safety and security concerns. *See* Ray Aff. ¶ 10.

Ra also wants special meals on certain days of the year. He claims that as a part of his Yoruba-Santeria religious faith he must celebrate six feast days with exotic food prepared in a special manner. He says that since his move to segregation he has been precluded from celebrating these feast days.[5] Ra requested that ROSP either order ready-made meals from a

---

[3]Segregation inmates may possess a religious necklace, holy book, and a medicine bag.

[4]Although Ra claims the pencils are necessary for his religion, Yoruba-Santeria, he has not explained this need. At most, he tried to demonstrate the pencils' religious significance by combining his request for them with his request for special meals. This temporal proximity, however, does not establish the link between BOTA, where he is an aspirant, and Yoruba-Santeria, his religion.
Ra has not suggested that he is a follower of both the BOTA and Yoruba-Santeria. At most, his claim suggests that BOTA somehow informs or furthers his Yoruba-Santeria faith. The Court reserves judgment on the issue of whether an inmate can consider himself a sincere follower of two distinct religions to garner favorable treatment under RLUIPA.

[5]Ra says that he had preformed his rites in his cell with Kosher commissary items before he was sent to segregation.

Richmond, Virginia restaurant called Ma Musus, or allow him to prepare his feast meals in the prison's kitchen.

When an inmate makes a request for a special religious observation, the general rule is that the chaplain at ROSP will assess the request. Institutional Operating Procedure ("IOP") 850-7.6. Here, however, because Ra included his request for special meals with his request for the colored pencils, ROSP processed his request using the same process described above for inmate requests for "religious personal property." The FRC denied his meal request because inmates are not permitted to purchase food or meals from outside vendors. *See* Ray Aff. ¶ 12. Additionally, the FRC denied his request to prepare his own food because of safety, security, space and staffing concerns. *See* Ray Aff. ¶ 14.

## II

Section 3 of RLUIPA provides that a state shall not impose a substantial burden on the religious exercise of a person confined in one of its institutions, even if it results from a rule of general applicability, unless it is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1)-(2). The statute requires the inmate to bear the burden of persuasion concerning the substantial burden element. *Id.* § 2000cc-2(b). If the plaintiff can meet this requirement, the burden then shifts to the government for the remaining elements of the test. *Id.*

RLUIPA defines religious exercise as: "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(a). Thus, "[t]he truth of a belief is not open to question, rather, the question is whether the objector's beliefs are truly held." *Cutter*, 125 S.Ct. at 2124 n.13 (internal quotations omitted). Here, the defendants

4

concede that Ra's beliefs are religious in nature, and do not question whether he sincerely holds them.

Thus, the analysis continues to whether the challenged prison rules create a substantial burden on the religious exercise. A substantial burden must be more than an inconvenience or a less desirable situation. *Woods v. Evatt*, 876 F.Supp. 756, 762 (D.S.C. 1995) (interpreting the substantial burden requirement of Religious Freedom Restoration Act ("RFRA") of 1993, 42 U.S.C. §2000bb).[6] Rather, the rule must pressure the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Here, the plaintiff has not proven that the denial of the colored pencils creates a substantial burden to practicing his faith – Yoruba-Santeria. He simply has not established how the use of colored pencils to color tarot keys is central to his religious belief, or how a denial creates a substantial burden. Ra, however, has met the necessary showing, albeit minimally, that denial of the meals presents a substantial burden on his religious exercise.

Once a plaintiff establishes a substantial burden on his religious exercise, the defendants must then show that such a denial furthers a compelling state interest in the least restrictive means. Although the plaintiff has not met his burden with respect to the denial of the colored pencils, the court will continue its analysis as if Ra had succeeded with both claims.

A state has a compelling interest in maintaining institutional security. *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). "We do not read RLUIPA to elevate accommodation of religious

---

[6]Federal district courts have adopted the practice of interpreting "substantial burden" under RLUIPA in the same manner as under RFRA. *See, e.g., Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 326 F.Supp.2d 1140, 1151 (E.D.Cal. 2003); *Marria v. Broaddus*, 200 F.Supp.2d 280, 298 (S.D.N.Y. 2002)

5

observances over an institution's need to maintain order and safety." *Cutter*, 125 U.S. at 2122. Additionally, courts will afford prison administrators due deference in establishing necessary regulations and procedures to maintain good order, security and discipline consistent with considerations of costs and limited resources. *Id.* at 2123.

As to the colored pencils, the defendants offer evidence that Ra's possession would constitute a security risk. The warden says that VDOC inmates are not allowed to possess colored pencils regardless of housing status because they could be fashioned into weapons. Ray Aff. ¶ 10. Additionally, the warden says that the pencils may be stockpiled and sold or bartered within the prison community, which would jeopardize good institutional order. *Id.* Finally, Ra offers no disputing evidence. Thus, the Court is satisfied that the denial of the colored pencils is the least restrictive means to further the compelling state interest in institutional safety and order.

As to the meals, the defendants say that a prisoner ordering meals from a restaurant would pose significant institutional safety concerns and create an unwieldy strain on the prison's limited resources. For example, before an inmate may order from a particular restaurant, the VDOC would have to verify the quality of food. Ray Aff. ¶ 13. Then, once the food was delivered, the prison would have to inspect the food for any security threats. *Id.* The prison would then have to store the food before bringing it to the prisoner, which would take limited space in the kitchen. *Id.* Thus, even if the prisoner paid for the food, the prison would still incur additional pecuniary and administrative costs.

Additionally, as to Ra's request to prepare his own food, the defendants say that such activity would also pose significant institutional safety concerns and create an unwieldy strain on

6

the prison's limited resources. For example, the warden says that allowing an untrained segregation inmate into the kitchen would be dangerous given the equipment kept there. *Id.* at ¶14. The warden also says that because only general population inmates are allowed to work in the kitchen, and given the level of risk attributable to segregation inmates, the potential would exist for inmate confrontation in the kitchen when the two groups interacted. *Id.* To move a segregation inmate from his cell to the kitchen also would require a two guard escort. *Id.* Moreover, allowing an untrained segregation inmate into the prison kitchen would create sanitation concerns. *Id.* Finally, Ra offers no evidence to dispute these concerns. Thus, the Court concludes that denying Ra meals ordered from a restaurant and denying him the opportunity to cook his own meals is the least restrictive means to further the compelling state interest in institutional safety and order.

Given the above analysis, the defendants are entitled to summary judgment as to Ra's claims under RLUIPA.

### III

The Court next turns to Ra's claims under 42 U.S.C. §1983 that the same denial of the colored pencils and meals violates his constitutional rights under the First and Ninth Amendments. The inquiry of federal courts into prison management is limited under §1983 to whether a particular system violates any constitutional provision. Outside this inquiry, courts must leave judgment calls to the expertise of prison officials. *See, Bell, supra; Block v. Rutherford*, 468 U.S. 576 (1984) (courts cannot substitute their own judgment on institutional management for that of prison officials). In all cases in which a prisoner asserts that a prison

7

policy violates the Constitution, therefore, the principle that inmates retain at least some constitutional rights must be weighed against the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration. *Washington v. Harper*, 494 U.S. 210 (1990). Accordingly, there need be only a rational connection between a prison policy and a legitimate governmental interest put forward to justify it. *Turner v. Safley*, 482 U.S. 78 (1987). Because the Court has already determined that the prison regulations at issue here pass constitutional muster under strict scrutiny; they certainly also pass rational basis review. *Thomasson v. Perry*, 80 F.3d 915, 948 (4th Cir. 1996). Therefore, the court finds no genuine issue of material fact in dispute as to Ra's constitutional claims. As such, the court grants the defendants' motion for summary judgment as to Ra's constitutional claims.

## IV

For the above-stated reasons, the Court grants the defendants' motions for summary judgment and strikes the cause from the active docket of the Court.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 28th day of June, 2005.

_James C. Turk_

Senior United States District Judge

8